UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-cv-24755-RS

PHILLIP WILLIAMS, *et al.*, individually and on
behalf of a class of similarly situated individuals,

      Plaintiffs,

v.

BURGER KING CORPORATION,
 a Florida corporation,

      Defendant.

---

**DEFENDANT BURGER KING CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTIONS TO (1) DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); AND (2) DENY CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(C)(1)(A) & (D)(1)(D)**

Defendant Burger King Corporation ("BKC") respectfully submits this reply in support of its motions to dismiss Plaintiffs' First Amended Complaint ("FAC," Dkt. No. 24) pursuant to Rule 12(b)(6), or to disallow their class claims pursuant to Rules 23(c)(1)(A) and (d)(1)(D).

### I. INTRODUCTION

For Plaintiffs to survive BKC's motion to dismiss their breach of contract claim, they must, but cannot, demonstrate that the advertising tagline "100% Whopper®, 0% beef"—in its full context—amounted to a "clear, definite, and explicit" promise that Burger King® restaurants would cook Impossible™ Whopper® patties entirely separately from beef and chicken. For Plaintiffs to survive BKC's motion to dismiss their consumer fraud and unjust enrichment claims, they must, but cannot, demonstrate that they have pleaded "a probability that a *significant portion of the general consuming public*," not a subset of vegans and vegetarians—could reasonably have been "misled" by that same tagline, in its full context, into expecting an entirely separate cooking method even if they did not request one. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Plaintiffs' opposition brief ("Pl. Opp." Dkt. No. 32) does not help them carry either burden, and the Court therefore should dismiss Plaintiffs' claims without further leave to amend.

BKC stresses that *context* for the "100% Whopper, 0% beef" tagline is important because BKC advertises its iconic Whopper® as "100% beef" to highlight that those patties do not include fillers or preservatives.  When BKC introduced the Impossible Whopper, using "100% Whopper, 0% beef" to differentiate it from the traditional Whopper, Plaintiffs contend that BKC did not "put an asterisk next to '0% beef' clarifying that [it] was only referencing the patty being put inside the burger."  Dkt. No. 32 (hereafter "Pl. Opp.") at 12.  In fact, BKC included *exactly* that disclaimer: "0% beef" refers to a "patty made from plants."  *See* Dkt. No. 19 ¶ 9.  Other advertisements with the tagline stated explicitly that the Impossible patty is "cooked on the same broiler as our WHOPPER® [beef] patties," and suggested that guests should "[l]et the restaurants know if you would like your Impossible™ patty prepared without using the broiler!"  *Id.* ¶¶ 13-14.  BKC said this on its official Twitter account, too, *see id.* ¶ 15, and in every major media interview its executives gave during the launch of this groundbreaking product.  *See* Dkt. No. 25 (hereafter "Opening Br." at 6-7).  Plaintiffs claim to have "research[ed]" the Impossible Whopper before they decided to purchase it, FAC ¶ 59, including through "social media advertisements and word of mouth," *id.* ¶ 34, yet claim ignorance of a fact that BKC stated literally everywhere it could: Absent a special request, Burger King would cook the patty on the regular flame broiler.

This critical context defeats Plaintiffs' claims in their entirety.  As for Plaintiffs' class claims, their brief included only a rote recitation that it is too soon for the Court to consider whether they ever will be able to satisfy Rule 23.  It is not.  Even in the cases Plaintiffs themselves cited, courts refused to certify claims based on advertising alone, where learning what each class member saw and considered would have required individual inquiries.  Here, not only have Plaintiffs focused on advertising that not all purchasers saw, but they are complaining about a "promise" BKC's advertisements *never* made—a separate cooking method—on a subject that is material only to a small fraction of vegan or vegetarian purchasers.  No court of which BKC is aware has certified such a claim.  Under whatever standard this Court may choose to apply to a pleading-stage attack on Plaintiffs' class claims, it is clear, here and now, that those class claims necessarily must fail.

### III. ARGUMENT

#### A. *Plaintiffs Have No Claim For Breach of Contract.*

Plaintiffs appear to agree with, and the case they cited confirms, "the general rule that an advertisement does not constitute an offer" to form a contract.  *Kearney v. Equilon Enters., LLC*, 65 F. Supp. 3d 1033, 1037 (D. Or. 2014).  To be a contract, an advertisement must contain a "clear,

definite, and explicit" promise that "le[ft] nothing open for negotiation." *Id.* at 1038. Plaintiffs did not dispute that the existence of a contract is a question of law that the Court may decide on a motion to dismiss. *See* Opening Br. at 9. Far from meeting their burden, however, Plaintiffs' brief demonstrated that they cannot even state clearly what the "definite promise" was that BKC supposedly failed to deliver. Their contract claims fail regardless of which state's laws apply.[1]

Plaintiffs' complaint ripped "100% Whopper, 0% beef" from its context, neither submitting nor describing any ads in full. As stressed in *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013), "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." Yet not only did Plaintiffs allege no context, they have not even stated clearly what they believe they were contractually "promised." In some places (*i.e.,* Pl. Opp. at 5, 10), Plaintiffs contend that the "contract" was only for a "separate cooking surface" for the Impossible patty. Elsewhere, Plaintiffs contend that BKC promised "that its Impossible Whopper would be *prepared and cooked* in a manner that the end product was '0% beef.'" *Id.* at 12 (emphasis added). *See also id.* at 2 (Impossible Whopper must be "prepared separately" and "completely meat-free"). Plaintiffs acknowledge that Burger King restaurants are "best know[n] for [their] 'Whopper' burgers made with beef." *Id.* at 2. Yet Plaintiffs say they expected such methodical separation inside the restaurant that if so much as a molecule of beef or chicken came into contact with an Impossible patty at any point before a guest took possession of it, BKC breached a "contract." There is, however, simply no reasonable way to construe "100% Whopper, 0% beef"—even if the Court ignores all context for the statement, as it should not—as a "clear, definite, and explicit" promise of laboratory-quality separation of proteins.

Plaintiffs' FAC and brief also fall short in their descriptions of how BKC supposedly breached this non-existent "contract." Plaintiffs had it within their power to test an Impossible Whopper and allege the extent (*if any*) to which the use of the same flame broiler resulted in the

---

[1] BKC demonstrated in its Opening Brief (at 8-9) that Florida choice of law rules require applying the contract laws of the state where each Plaintiff purchased an Impossible Whopper. Plaintiffs' brief (at 7) asserts baldly that they "are attempting to apply Florida contract law to [all of] their claims," but they provided no legal argument or authority as to why the Court should do so. The need to apply the laws of multiple states further demonstrates why Plaintiffs' class claims must fail. *See, e.g., Langan v. Johnson & Johnson Cons. Cos.*, 897 F.3d 88, 97-98 (2d Cir. 2018) ("district courts themselves must undertake a considered analysis of the differences in state laws" before certifying classes); *Smith v. U.S. Bank, N.A.*, No. 1:16-cv-21146-UU, 2017 WL 698530, at *12 (S.D. Fla. Feb. 22, 2017) (denying class certification due to, among other things, "substantial differences between different states' laws concerning breach of contract claims").

Impossible patty picking up minute traces of beef. *See, e.g., Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 191 (S.D.N.Y. 2016) (dismissing deceptive advertising claim where plaintiff failed to plead that "slack fill" in product was nonfunctional, even though he could have consulted experts or compared similar products). Instead, Plaintiffs appear to rely on pure speculation that "Impossible patties are contaminated." Pl. Opp. at 3, 4 5, 9. Are they complaining about ten parts of beef per billion? One? Their complaint and brief do not say, but without these specifics, they cannot assert how BKC supposedly breached a "clear, definite, and explicit" promise.[2]

Plaintiffs' brief relied extensively on *Kearney*, but that case is highly distinguishable.[3] The defendant in *Kearney*, 65 F. Supp. 3d at 1035, displayed signage at certain service stations that stated "Buy 10 gallons of fuel, get a voucher for a free lift ticket." The actual voucher, however, "was a 'two for one' coupon that allowed the individual to obtain a free lift ticket only after purchasing a lift ticket at full price at a participating ski resort," and which also had other restrictions. *Id.* Because the signage offered a "clear, definite, and explicit" promise of a "free lift ticket" that "le[ft] nothing open for negotiation," *id.* at 1038, and "Plaintiffs accepted the offer through performance by purchasing ten gallons of fuel," *id.* at 1039, the court denied dismissal of the plaintiff's contract claims. Notably, however, the court dismissed the same plaintiff's *fraud-based* claims for several reasons, including differences among putative class members regarding who knew what about the promotion's actual terms. *See id.* at 1045-46.

Plaintiffs cannot compare their case to *Kearney*. They cannot portray the "100% Whopper, 0% beef" tagline as containing a "clear, definite, and explicit" promise of a totally separate preparation. They certainly cannot do so without quoting an entire advertisement and explaining

---

[2] As a substitute for actual evidence, Plaintiffs allege that Plaintiffs McGee and Cuthrell became ill and posit that this may have happened because they ingested meat while eating an Impossible Whopper. *See* Pl. Opp. at 6. This mischaracterizes the FAC. Mr. McGee alleges this about the *second* Impossible Whopper he ordered and consumed, not his first (FAC ¶ 61). Ms. Cuthrell pleads that she became ill "within a few hours of eating the Impossible Whopper" (*id.* ¶ 65), not "shortly after," as Plaintiffs' brief (at 6) contends. Neither Plaintiff pleads any real basis to tie his or her alleged illness to Plaintiffs' claims in this case.

[3] The only other case upon which Plaintiffs rely, *Schultz v. American Airlines, Inc.*, No. 18-80633-CIV, 2019 WL 3000448 (S.D. Fla. July 10, 2019), was not an advertising case. The airline's website briefly quoted a $197 fare for a particular ticket, but by the time the plaintiff "clicked on the corresponding link to pay," her price was $297. *Id.* at *1. The court believed that "Schultz's contention that she reasonably believed the [$197 display] was intended as an offer appears unreasonable as a matter of law," but because discovery had proceeded while the defendant's dismissal motion was *sub judice*, and the defendant was poised to seek summary judgment, the court elected to rule after hearing more, for example, about whether "Schultz's chosen seat could be reserved or otherwise held before she clicked 'pay now.'" *Id.* at *5

4

how, if the advertisement contained "patty made from plants" disclaimers, mentioned use of the grill, and expressly invited guests to request an alternate cooking method, they could have construed it as containing an explicit promise for separate cooking *without* a special request.

**B.      *Plaintiffs Have No Claims For Breach of State Consumer Fraud Laws.***

Plaintiffs' road to a consumer fraud claim is even rougher. The parties agree that Plaintiffs must satisfy Rule 9(b) and that the state laws at issue all require Plaintiffs to satisfy the "reasonable consumer" test. Pl. Opp. at 11. Pleading "reasonable consumer" claims, as held in *Ebner*, 838 F.3d at 965, "requires more than a mere possibility" that an ad "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner," but instead "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." The recent *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020), highlighted that "context is crucial" in "reasonable consumer" claims, and upheld the dismissal of claims regarding advertised "Angus Beef" in sandwiches because the plaintiff's claimed expectation was unreasonable. Those advertisements' full context included showing the product on the defendant's grill, just as BKC's ads do. To the extent Plaintiffs claim to have reached a "plausible *misunderstanding*" of what "100% Whopper, 0% beef" meant in advertisements, that was rejected as an alternative path to "reasonable consumer" liability in *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019).

Courts considering food-based claims also have been clear to distinguish between alleged misrepresentation of *ingredients* and the alleged presence of residual *traces*. *See, e.g., Parks v. Ainsworth Pet Nutrition,* LLC, No. 18 Civ. 6936, 2020 WL 832863, at *2 (S.D.N.Y. Feb. 20, 2020) ("negligible" trace of a non-ingredient "is not materially misleading to a reasonable consumer"); *Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-cv-6664-BLF, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (objective reasonable consumer would not expect "all natural . . . to mean the utter absence of residual pesticides"); *Axon v. Citrus World, Inc.*, No. 18-cv-4162 (ARR)(RML), 2019 WL 8223527 (E.D.N.Y. Jan. 14, 2019) (same). Courts also reject false advertising charges that are based on a strained reading of an advertiser's claim. In *Gallagher v. Chipotle Mexican Grill, Inc.*, No. 15-cv-3952-HSG, 2016 WL 454083 (C.D. Cal. Feb. 5, 2016), for example, Chipotle advertised its products as GMO-free. The plaintiff accused it of fraud not because it used any genetically modified products but because some of the animals whose meat Chipotle served may have consumed GMO feeds. The Court dismissed those claims as unreasonable. *See also, e.g.,*

5

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) ("[T]he reasonable consumer is aware that Buitoni Pastas are not springing fully formed from Ravioli trees and Tortellini bushes," and are not truly "natural"). Plaintiffs' reading of "100% Whopper, 0% beef," with respect to a patty served in a restaurant famous for beef hamburgers, is equally untenable.

Plaintiffs' FAC does not claim that BKC "targeted" vegetarians or vegans in its ads for the Impossible Whopper. The FAC withdrew Plaintiffs' prior (false) claims that BKC advertised the mayonnaise-containing Impossible Whopper as "vegan." They are, instead, pleading their case from the provincial perspectives of their strict personal dietary requirements, without even attempting to show that the cooking method for the Impossible Whopper was material to "a significant portion of the general consuming public." Their claims that BKC misled them into believing that Impossible patties would be cooked entirely separately and served without the slightest speck of beef or chicken having touched them thus fail the "reasonable consumer" test.

Because Plaintiffs cannot square their claims with the actual legal standard as applied in *Ebner* and the other recent cases referenced above, their brief effectively pretended that the standard is more lax. In the case they call "directly on point," *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015), the name of the yogurt products at issue was literally "Total 0%," and the packages displayed that name prominently "on the top and front labels . . . without providing any context as to what the '0% refers to." *Id.* at *4.[4] The claimant alleged that reasonable consumers may have understood "0%" to mean that the products lacked sugar or other "unhealthy" qualities, while the defendant portrayed "0%" (divorced from "Total") as referring only to the product's fat content. The court held that the claimant's reading was not "patently implausible" and, on that basis, denied dismissal. *Id.* at *20. "Not patently implausible," however, is the wrong standard. The correct standard, as set forth later in *Ebner*, is *probability* that a *significant portion of the general public* would be misled.

Importantly, too, Plaintiffs rely exclusively on cases where allegedly false statements— mostly health-related claims—were featured on the product packaging itself, not just in advertising. BKC never made, and Plaintiffs do not claim it made, the "100% Whopper, 0% Beef"

---

[4] The *Stoltz* case was a classic stick-up and the plaintiff promptly dropped it, presumably in exchange for an individual settlement, shortly after defeating the motion to dismiss. *See* No. 14-cv-3826 (E.D.N.Y.), Dkt. No. 55 (voluntary dismissal on Dec. 9, 2016). So, too, did the plaintiff in *Atik*, whose case was heard by the same judge, shortly after surviving dismissal. *See* No. 15-cv-5405 (E.D.N.Y.), Dkt. No. 68 (voluntary dismissal on Dec. 19, 2017).

statement on the Impossible Whopper wrapper or other packaging. In *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 415 (S.D.N.Y. 2015), *packages* falsely described almond milk products as being "certified by the American Heart Association" when they were not. *Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011), also contained a false health claim on product packaging that the yogurt at issue promoted digestive health in a way that other yogurts did not. In *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014), after the defendant moved production of "Beck's" beer from Germany to Missouri, it continued to describe the beer on its packaging as "Brewed Under the German Purity Law of 1516." *Id.* at 1340. That claim was false, and the court held it could deceive reasonable consumers, both because the U.S.-brewed beer was not subject to any German law and because the German law in question "allows only the inclusion of barley, hops, and water in beer, [while] Beck's contains yeast and other ingredients and additives." *Id.* at 1342.[5] None of those claims is analogous to "100% Whopper, 0% beef," which even Plaintiffs do not claim was an attempt to differentiate the Impossible Whopper from other *plant-based* alternatives available at quick-service restaurants.

Two other cases Plaintiffs relied upon—*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), and *Atik v. Welch Foods, Inc.*, No. 15-cv-5405, 2016 WL 11480151 (S.D. Fla. Jan. 20, 2015)—involved "fruit snacks" sold in packages illustrated with pictures of fruits that the products did not actually contain and descriptions that the snacks were "healthy" despite being mostly sugar. In *Atik*, 2016 WL 11480151, at *2, *11, where fruit snack packaging stated that the snacks contained "the highest quality fruit proudly grown on family farms," and was "wholesome," when their fruit content mostly came from apple and grape juice, the court held it not to "be unreasonable as a matter of law for an ordinary consumer to believe that" the fruit snacks would "bring about the health benefits" of the depicted fruit. The *Atik* court followed *Williams*, which denied dismissal of a fruit snack claim for analogous reasons.[6]

---

[5] Plaintiffs also rely on *Marty* to avoid dismissal of their claim for unjust enrichment. *See* Pl. Opp. at 17-18. The parties appear to agree that the fate of Plaintiffs' unjust enrichment claim is tied to their other claims. *See* Pl. Opp. at 18 n.5. If the Court dismisses both Plaintiffs' breach of contract and consumer fraud claims, as it should, their unjust enrichment claim has no independent substance and must be dismissed, too.

[6] The other cases upon which Plaintiffs relied involved "all natural" claims on product labels. *See Bolhke v. Shearer's Foods, LLC*, No. 9:14-CV-80727, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015) (rice crisps falsely advertised as containing "No Artificial Ingredients"); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359 (S.D. Fla. 2014) (various products described as "ALL NATURAL" that contained genetically modified ingredients).

7

BKC never used the words "0% beef" without "100% Whopper." Ads using this tagline included the disclaimer "patty made from plants," a statement that the patty would be broiled on the same surface as meat absent a customer request, or both. A reasonable consumer viewing BKC's ads could not have believed that BKC was promising to deliver an Impossible patty that never touched the same surface as beef or chicken at any point during preparation or cooking. The Court should dismiss Plaintiffs' consumer fraud and unjust enrichment claims.

C.   **Plaintiffs' Claims Are Too Individualized to Support Class Certification**

The Court should dismiss Plaintiffs' FAC entirely, but if it does not, it should rule that Plaintiffs may not assert surviving claims on behalf of a class. BKC made clear in its motion (Dkt. No. 25, at 18-19) its recognition that pleading-stage rejection of class claims is a "rare" remedy reserved for cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." This is such a case. Plaintiffs' brief (at 18-19) argues that the method by which BKC cooks the Impossible patty is material to *all* purchasers, but they allege no support for this, and all seven Plaintiffs are self-described vegetarians or vegans who followed unique and different personal diets. Plaintiffs do not posit the existence of even a single non-vegetarian or non-vegan who would have refrained from purchasing an Impossible Whopper had he or she known it would be cooked on the same flame broiler used for beef and chicken. Nor do Plaintiffs allege that only vegetarians or vegans purchased the Impossible Whopper.

Just as importantly, Plaintiffs' brief totally ignored all of the ways that BKC disclosed use of the flame broiler to cook the Impossible patty and offered guests the option of requesting an alternative. The ads at issue said this, and BKC repeated the same statements in journalistic and social media, over and over again. BKC's brief did not cite to "random news articles and television segments" (Pl. Opp. at 1); it cited numerous major media reports. These reports were easy to find, and Plaintiffs claim to have conducted "research" before deciding to try the Impossible Whopper. Plaintiffs, therefore, cannot attempt to argue that all vegans and vegetarians arrived at the Burger King counter or drive-through without knowing this fact. Customers who ordered inside the restaurant, moreover, could see the cooking method with their own eyes. There is no way to differentiate who saw what, before or during the purchase process, without individual inquiries.

Indeed—and this single fact alone suffices to preclude class certification—Plaintiffs' proposed class of "all persons" who purchased the Impossible Whopper (*see* FAC ¶ 75) includes *people who requested and received a separate cooking process* for that Impossible Whopper, as

8

BKC's advertisements and media statements told them they could do. Those guests, along with guests who knew they could have requested an alternate cooking method but elected not to do so, unquestionably have no claim here. Plaintiffs, however, do not and cannot propose a method to identify and exclude either group without individual inquiries. Their brief also ignored *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012), and *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015), both of which precluded certification where class members with potential claims vs. those without could not be identified in an administratively feasible way.

Plaintiffs' brief contended that it is too soon for the Court to address Rule 23 issues, and they cited a few cases in which courts ultimately certified consumer fraud classes. Plaintiffs, however, did not even try to distinguish the numerous cases BKC cited in its opening brief (at 18) where judges in Florida and elsewhere denied class certification at the pleading stage based on the individualized nature of those plaintiffs' claims. As for the cases in which courts certified consumer claims, these cases actually demonstrate why Plaintiffs themselves can never hope to satisfy Rule 23(b)(3)'s requirement that common questions must predominate.

In *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288 (C.D. Cal. 2011), claimants alleged that the packaging for "YoPlus" yogurt products touted the products as "promot[ing] digestive health in a way that ordinary yogurt does not." The defendant did not attempt a motion to dismiss. The district court certified a class and, after the Supreme Court decided *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the defendant sought decertification. The district court kept the class certified because the digestive-health claims were so ubiquitous, and so material to the yogurt's differential marketing, to cause an inference that reasonable purchasers were misled. *See Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011). Whether that court would have decided the case differently given more recent "reasonable consumer" precedent is unknowable, but there is no analog between the health messaging in *Johnson* and Plaintiffs' case. Here, what made the Impossible Whopper different was its use of a plant-based patty rather than a "100% beef" patty. It was not a non-existent promise of a separate cooking method.

In *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374 (S.D.N.Y. 2016), the plaintiffs attempted to certify classes based on (1) a potentially misleading trademark that appeared only on some product packages, and (2) an advertising campaign that pertained to a larger set of products. The court, however, refused to certify claims about the defendant's advertising because not "all members of the class saw the same advertisements . . . and not all the

advertisements contained the alleged misrepresentations, the[] questions of individual members' exposure to the allegedly deceptive advertising would predominate on those claims." *Id.* at 389. The court only certified "specific labeling and packaging claims" on products packaged with an "Active Naturals" trademark. *Id.* at 389-90. The case thus supports BKC's position, not Plaintiffs'. No packaging claims are at issue here, and Plaintiffs do not and cannot claim even that all BKC ads for the Impossible Whopper used the "100% Whopper, 0% beef" tagline.

The same is true of *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015). That court believed it could certify state law consumer fraud claims only to the extent that ConAgra's "'100% Natural' claim was both common to all members of the class and material, *i.e..*, that it led [all] class members to purchase the Wesson Oils believing they contained no GMOs." *Id.* at 995. The court distinguished *Jones v. ConAgra Foods, Inc.*, No. C 12-1633 CRB, 2014 WL 2702726, at *16 (N.D. Cal. June 13, 2014), which denied class certification where "the 100% natural claim [was] material to some customers," but not "necessarily material to reasonable consumers," who might have "numerous reasons" to buy the products apart from that claim," such that the plaintiffs had no hope of proving materiality and reliance through common proof. Here, too, Plaintiffs did not attempt to dispute that Impossible Whopper purchasers had many different reasons to try to the product—including a simple desire to try something different—or that BKC widely advised guests' of their ability to request an alternate cooking method if they wanted it.

Plaintiffs did not dispute, either, that it would be their burden to show *causation and damages* from "100% Whopper, 0% beef" advertisements through common proof. They disregarded their burden under Local Rule 23.1(b)(1)-(2) to allege in their FAC how they supposedly will be able to meet this burden. Their brief ignored the controlling *Cordoba v. DirecTV, LLC*, 924 F.3d 1259, 1264 (11th Cir. 2019), which precludes certification where "many [and] perhaps most members of the class" could not assert the same injury as the named plaintiff. No matter how Plaintiffs ultimately may attempt to define their class—whether as "all purchasers" of the Impossible Whopper or some subset that could be identified only through class member-by-class member mini-trials—common questions never can predominate.

### IV.   CONCLUSION

For the reasons stated above, and in BKC's opening brief, the Court should dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6). In the alternative, the Court should hold, pursuant to

Rules 23(c)(1)(A) and (d)(1)(D), that Plaintiffs cannot represent a class and that their class claims therefore should be struck from the FAC.

Respectfully submitted,

Dated: April 30, 2020

    By: /s/ *Jeffrey S. Jacobson*
        Jeffrey S. Jacobson (*pro hac vice*)
        FAEGRE DRINKER BIDDLE & REATH LLP
        1177 Avenue of the Americas
        New York, NY 10036
        Tel: (212) 248-3191
        NY State Bar No. 2925097
        jeffrey.jacobson@dbr.com

    By: /s/ *Michael D. Joblove*
        Michael D. Joblove
        GENOVESE JOBLOVE & BATTISTA
        100 SE 2nd Street, Suite 4400
        Miami, Florida 33131
        Tel: (305) 349-2300
        mjoblove@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 30, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

    /s/ Michael D. Joblove
    Michael D. Joblove

## SERVICE LIST

David P. Healy, Esq.
dhealy@davidhealylaw.com
3522 Thomasville Road, Suite 301
Tallahassee, Florida 32309
Telephone:	(850) 222-5400
Facsimile:	(850) 222-7339
*Attorney for Plaintiff*

Eugene Y. Turin, Esq.
eturin@mcgpc.com
McGuire Law, P.C.
55 W. Wacker Dr., 9th Floor
Chicago, Illinois 60601
Telephone:	(312) 893-7002
*Attorney for Plaintiff*

Jeffrey S. Jacobson (admitted pro hac vice)
Jeffrey.jacobson@dbr/com
Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, NY  10036
Tel: (212)248-3191
N.Y. State Bar No. 2925097

Michael D. Joblove, Esq.
mjoblove@gjb-law.com
Aaron S. Blynn, Esq.
ablynn@gjb-law.com
100 S.E. Second Street
Suite 4400
Miami, Florida 33131
Telephone:	(305) 349-2300
Facsimile:	(305) 428-8803
*Attorneys for Defendant Burger King Corporation*