UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-24755-SINGHAL

PHILLIP WILLIAMS, et al.,

    Plaintiffs,

v.

BURGER KING CORPORATION,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on the Defendant's Request for Judicial Notice in Support of Burger King Corporation's Motions to (1) Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6); and (2) Deny Class Certification Pursuant to Fed. R. Civ. P. 23(c)(1)(A) and (d)(1)(D) ("Request for Judicial Notice") (DE [20]) and the Defendants' Motion to Dismiss Second Amended Complaint and Deny Class Certification ("Motion to Dismiss") (DE [25]).  This Court heard oral argument from counsel on June 30, 2020.  Having considered the motion, the record, and being otherwise fully advised in the premises, this Order follows.

**I.      BACKGROUND**

In the First Amended Complaint ("Complaint") (DE [24]), Plaintiffs Phillip Williams, William Jones, Michael Roberts, Ali Bey, Christopher McGee, Tiffany Cuthrell, and Marie Venter (collectively "Plaintiffs") assert Defendant Burger King Corporation ("BKC") "duped" them.  Specifically, Plaintiffs allege they were misled into believing the "Impossible" plant-based patty in Burger King's "Impossible Whopper" sandwich, supplied by Impossible Foods, Inc., would be flame broiled on a different grill than the one used to

cook beef and chicken. Plaintiffs have since dropped the claim that BKC marketed the "Impossible Burger" as vegan.

Plaintiffs allege in their Complaint (DE [24]) BKC operates myriad fast food restaurants across the country and is best known for its "Whopper" burgers made with beef. (Compl. (DE [24]), ¶ 24). In April 2019, knowing that there is a growing consumer demand for vegan, vegetarian, and meat-free food options, BKC decided to tap in by creating its "Impossible Whopper," with a burger patty made from "Impossible" meats. *Id.* at ¶¶ 5, 25. Plaintiffs bring suit against BKC alleging (1) breach of contract (Count I); (2) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II); (3) violation of New York's Deceptive Acts or Practices (Count III); (4) violation of New York's False Advertising Act (Count IV); (5) violation of California's False Advertising Law ("FAL") (Count V); (6) violation of the "Unlawful Prong" of the California Unfair Competition Law ("UCL") (Count VI); (7) violation of the "Fraudulent Prong" of the California Unfair Competition Law ("UCL") (Count VII); (8) violation of Michigan's Consumer Protection Act ("MCPA") (Count VIII); (9) violation of Georgia's Deceptive and Unfair Trade Practices Act (Count IX); and (10) unjust enrichment (Count X).

In the instant motion, BKC argues Plaintiffs do not dispute the "Impossible Burger" is 100% plant-based and Plaintiffs claims cannot meet the "reasonableness" requirement. BKC insists its advertising campaign never promised the "Impossible Burger" would be cooked on a separate surface, and Plaintiffs could not have had an objectively reasonable belief that it would unless specifically requested by a patron when placing an order. Plaintiffs admit they did not ask about the cooking method nor did they request an alternate method of preparation to satisfy their unique dietary requirements.

BKC also takes exception to the creation of a class, arguing that Plaintiffs cannot represent a class of all "Impossible Burger" purchasers because each Plaintiff has different personal preferences, and Plaintiffs fail to plausibly assert that all "Impossible Burger" purchasers share their stance. Plaintiffs disagree and claim BKC's misleading advertising created purchasers where none would have otherwise existed. Plaintiffs also argue it is too early to consider class certification.

## II. LEGAL STANDARD

### A. Motion to Dismiss

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure ("Rule") 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombev v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d

3

1043, 1057 (11th Cir. 2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### B. Class Certification

"A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (footnotes omitted). Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action, commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009); *see also* Fed. R. Civ. P. 23(a). If the proposed class satisfies the four factors of numerosity, commonality, typicality, and adequacy, as well as the implicit requirement of ascertainability, it must then demonstrate entitlement to class relief under one of the three provisions in Rule 23(b). *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). Certifying a class action under Rule 23(b)(3) requires additional findings that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The burden of satisfying Federal Rule of Civil Procedure 23 is on the party seeking class certification. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996).

### III. DISCUSSION

#### A. Count I – Breach of Contract

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3)

4

damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *see e.g.*, *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id.* (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (citing *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999))).

Here, the parties agree there is a valid contract. The dispute is based on whether such contract is express or implied. "An express contract differs from an implied contract in that "[a]n express contract is one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into, while an implied contract is one not created or evidenced by distinct and explicit language." *Davidson v. Maraj*, 609 Fed. Appx. 994, 998 (11th Cir. 2015) (citations omitted). In this case, Burger King made an offer (the ad for the "Impossible Burger"), which Plaintiffs accepted (by ordering the "Impossible Burger"), consideration was exchanged (Plaintiffs' money for the "Impossible Burger"), and the essential terms were clear. Thus, this Court must conclude the parties had an express contract.

Plaintiffs' argument, however, loses momentum when they claim there was a presumption the "Impossible" patties would be cooked on a different grill than other items sold at Burger King. This is not an essential term of the contract. Furthermore, as Burger King's slogan has boasted for forty years, Plaintiffs' could have "Had it [their] way" by requesting a different cooking method, thereby altering the terms of the contract.

### B. Count II – FDUTPA

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or

5

commerce." § 501.204(1), Fla. Stat. A complaint states a FDUTPA cause of action if it alleges (1) an unfair practice or deceptive act; (2) causation; and (3) actual damages. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012). Stated otherwise, the law allows for a plaintiff to recover under FDUTPA if he proves he was injured "by an objectively deceptive act or statement." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1316 (S.D. Fla. 2017). Here, Plaintiffs' FDUTPA claim is premised on the fact that the "Impossible Whopper" was cooked on the same grill as meat-containing products. The Complaint (DE [24]) fails to provide any more specific details regarding the preparation of the "Impossible Whopper."

The remainder of Plaintiffs' consumer fraud claims will be set forth below but analyzed collectively following section I. Each claim rests upon the "reasonable consumer" test also outlined below.

### C. Count III – New York's Deceptive Acts or Practices

New York General Business Law, N.Y. Bus. Corp. Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business" and creates a private right of action under which a litigant may recover actual damages. NY CLS Gen Bus § 349; *see generally Belair Care Ctr., Inc. v. Cool Insuring Agency, Inc.*, 168 AD3d 1162, 1165–1166, (2019); *Benetech, Inc. v. Omni Fin. Group, Inc.*, 116 AD3d 1190, 1190–119 (2014). As a threshold matter, "[a] claim brought under this statute must be predicated on an act or practice which is consumer-oriented, that is, an act having the potential to affect the public at large." *Elacqua v. Physicians' Reciprocal Insurers*, 52 AD3d 886, 888, 860 (2008) (citation omitted). "A cause of action to recover damages pursuant to General Business Law § 349 has three elements: first, that the challenged act or practice was

6

consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Beneficial Homeowner Serv. Corp. v. Williams*, 113 AD3d 713, 714 (2014).

### D. Count IV – New York's False Advertising Act

New York General Business Law, N.Y. Bus. Corp. Law § 350, states "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." NY CLS Gen Bus § 350. To establish a claim under either section of this law, a plaintiff must show "(i) that the act or practice was misleading in a material respect, and (ii) that the plaintiff was injured." *Coors Brewing Co. v. Anheuser-Busch Cos.*, 802 F. Supp. 965, 975 (S.D.N.Y. 1992); *see also McDonald v. North Shore Yacht Sales, Inc.*, 513 N.Y.S.2d 590, 593 (N.Y. Sup. Ct. 1987).

### E. Count V – California's False Advertising Law

California's False Advertising Law (FAL), Bus. & Prof. Code, § 17500 et seq., has been accurately described as the major California legislation designed to protect consumers from false or deceptive advertising. *See Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 305 (2020) (citation omitted). The procedures set forth in the FAL and in California's unfair competition law (UCL), Bus. & Prof. Code, § 17200 et seq., are in many respects parallel to one another, and the UCL specifically provides that any practice that violates the FAL is also prohibited by the UCL. *See* Bus. & Prof. Code, § 17200. California's FAL prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002). Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, "it is necessary only to show that

7

"members of the public are likely to be deceived." *Id.* (quoting *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985).

**F. Count VI – Violation of the "Unlawful Prong" of the California Unfair Competition Law**

The UCL sets out three different kinds of business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the fraudulent. *See* Cal. Bus. Prof. Code § 17500 et seq. A private person has standing to bring an action under the California Unfair Competition Law, Bus. & Prof. Code, § 17200 et seq., only if he or she has suffered injury in fact and has lost money or property because of the unfair competition. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1360–61 (2010). A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact, and a loss of money or property caused by unfair competition. *Id.* "An unlawful business practice under [Business and Professions Code] section 17200 is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *Id.* (citations omitted).

**G. Count VII – Violation of the "Fraudulent Prong" of the California Unfair Competition Law**

A UCL claim based on the fraudulent prong can be made not only on representations that deceive because they are untrue, but also those which despite some level of accuracy still tend to mislead or deceive. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) (citations omitted).

**H. Count VIII – Michigan's Consumer Protection Act ("MCPA")**

8

The Michigan Consumer Protection Act (MCPA) prohibits unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.  *See* Mich. Comp. Laws Ann. § 445.903.  "The MCPA is much broader than the common law tort of fraud, covering not only deceptive practices but also unfair and unconscionable conduct." *Date v. Sony Elecs., Inc.*, 2010 WL 3702599 (E.D. Mich. Sep. 16, 2010).  It applies only to purchases by consumers and does not apply to purchases that are primarily for business purposes.  *See Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F. Supp. 3d 874, 887 (E.D. Mich. 2015) (citations omitted).  The MCPA prohibits making an omission of fact that tends to mislead or deceive any consumer, but only if the omitted fact could not reasonably be known by that consumer.  *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 283–84 (1999).

### I. Count IX – Georgia's Deceptive and Unfair Trade Practices Act

The stated intent of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq., is to protect the public from acts and practices which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally.  *Henderson v. Gandy*, 270 Ga. App. 827, 829 (2004) (citations omitted).  The scope of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq., is limited to acts in the conduct of consumer transactions and consumer acts or practices in trade or commerce.  *Id.* at 829–30.  O.C.G.A. § 10-1-392 (a) (3), defines "consumer acts or practices" as "acts or practices intended to encourage consumer transactions," and defines "trade" and "commerce" as "the advertising, distribution, sale, lease, or offering for distribution, sale, or lease of any goods, services, or any property, tangible or intangible, real, personal, or mixed, or any other article,

commodity, or thing of value wherever situated and shall include any trade or commerce directly or indirectly affecting the people of the state." OCGA § 10-1-392 (a) (2.1).

## PLAINTIFFS' CONSUMER FRAUD CLAIMS

Plaintiffs' counts II through IX are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted). "Under the reasonable consumer standard, [Plaintiffs] must show that members of the public are likely to be deceived." *Id.* (citations omitted); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citation omitted). "This standard requires a showing of 'probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer.'" *Id.* (citation omitted); *see also Ebner*, 838 F.3d at 965 (requiring more than a mere possibility that Burger King's advertisement "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.").

Plaintiffs argue Burger King's advertisement promised more than a non-meat patty. Further, Plaintiffs argue it is too early to make such a determination at this stage of the proceedings. This Court cannot agree. Burger King promised a non-meat patty and delivered with the "Impossible Burger."

### J. Count X – Unjust Enrichment

"A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a "contract" as a matter of law." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). "Liability in unjust enrichment has in principle nothing

to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003). The doctrine applies only where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005).

This Court must dismiss Plaintiffs' claim for unjust enrichment with prejudice because the existence of a contractual relationship between the parties typically precludes an unjust enrichment claim arising out of a contract. *See White Holding Co., Ltd. Liab. Co. v. Martin Marietta Materials, Inc.*, 423 Fed. Appx. 943, 946 (11th Cir. 2011). Furthermore, Burger King gave adequate consideration to Plaintiffs for the benefit conferred (i.e., the "Impossible Whopper" in exchange for the price).

### K. Defendant's Motion to Deny Class Certification

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). However, dismissal of class allegations at the pleading stage "is an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." *Lawson v. Life of the S. Ins., Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012) (citations omitted). "Failure to prove any of the four Rule 23(a) requirements and at least one of the alternative requirements of Rule 23(b) precludes class certification." *Id.* at 696 (citations omitted).

As an initial matter, "[c]onsidering whether questions of law or fact common to class members predominately begins, of course, with the elements of the underlying cause of action." *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014). Plaintiffs argue it is too soon for this Court to consider whether they satisfy Rule 23. Defendant disagrees and argues Plaintiffs claims are too individualized to support class certification. This Court agrees. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Defendant's Request for Judicial Notice in Support of Burger King Corporation's Motions to (1) Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6); and (2) Deny Class Certification Pursuant to Fed. R. Civ. P. 23(c)(1)(A) and (d)(1)(D) (DE [20]) is **GRANTED**. The Defendants' Motion to Dismiss Second Amended Complaint and Deny Class Certification (DE [25]) is **GRANTED**. Plaintiffs' claims for breach of contract and consumer fraud (Counts I through IX) are **DISMISSED WITHOUT PREJUDICE** and Plaintiffs claim for unjust enrichment (Count X) is **DISMISSED WITH PREJUDICE**. Further, as stated on the record, the Plaintiff's request for class certification under Rule 23(b)(3) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file a motion for leave to amend its complaint by **July 27, 2020**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 20th day of July 2020.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF